**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| AMBER YEAROUT, § <br> § <br> Plaintiff § <br> § <br> v. § <br> § <br> MICHAEL J. ASTRUE, § <br> **Commissioner of Social Security,** § <br> § <br> Defendant. § | Civil Action No. 3:10-CV-0430-L-BH |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the consent of the parties and the District Court's *Order of Transfer*, dated April 6, 2010, this case has been transferred for all further proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c). Before the Court are *Plaintiff's Opening Brief*, filed July 12, 2010, and *Defendant's Motion for Summary Judgment*, filed September 9, 2010. Based on the relevant filings, evidence, and applicable law, Plaintiff's request to remand this case should be **GRANTED**, Defendants's motion should be **DENIED**, and the case should be **REMANDED** to the Commissioner for reconsideration.

**I. BACKGROUND**[1]

**A. Procedural History**

Plaintiff Amber Yearout ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits under Title XVI of the Social Security Act. On October 20, 2006, Plaintiff applied for supplemental

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

security income, alleging disability since April 1, 2004, due to ovarian cancer and Crohn's disease. (R. at 73-75, 87.) Her application was denied initially and upon reconsideration. (R. at 55, 56.) She timely requested a hearing before an Administrative Law Judge ("ALJ"), and personally appeared and testified at a hearing held on June 18, 2008. (R. at 67, 37-54.) On July 22, 2008, the ALJ issued a decision finding Plaintiff not disabled. (R. at 12-21.) On October 30, 2009, the Appeals Council denied her request for review, and the ALJ's decision became the final decision of the Commissioner. (R. at 1-5.) Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g).

**B.** **Factual History**

    **1.** **Age, Education, and Work Experience**

Plaintiff was born on February 9, 1984, was twenty years old on her alleged onset date, and was twenty-four years old at the time of the hearing before the ALJ. (R. at 41.) She has a high school education and has no past relevant work. (R. at 19-20.)

    **2.** **Medical Evidence**

Plaintiff's relevant medical history began in early 2004, when Plaintiff started complaining of increasing abdominal pain, nausea, and vomiting. (R. at 241, 361.) In March 2004, a pelvic sonogram and an abdominal scan found a cystic pelvic mass and Plaintiff underwent surgery to correct it. (R. at 235-36, 241-44.) In May that year, another scan found gallbladder dysfunction and cholecystokinin, and Plaintiff underwent surgery to have her gall bladder removed. (R. at 226, 230-32, 361.) In June, Plaintiff reported that she was no longer feeling any abdominal pain. (R. at 361.) On July 13, 2004, complaining of sharp chest pain and abdominal pain, Plaintiff saw gastroenterolo--gist Andrew Gottesman, M.D., who ordered stool studies and placed her on a medication regimen.

(R. at 150, 352.) On July 29, 2004, Dr. Gottesman noted that Plaintiff's symptoms had improved at least eighty percent. (R. at 352.) On August 25, 2004, he notified Plaintiff that his findings from an upper GI series of hers were consistent with Crohn's disease. (R. at 346.) On September 13, 2004, he noted that Plaintiff had a "low grade case of crohn's disease." (R. at 342.) Plaintiff continued seeing Dr. Gottesman for the rest of the year. (R. at 335-346.)

On January 24, 2005, Dr. Gottesman noted that Plaintiff was doing "reasonably well" with her treatment for Crohn's disease and had no significant cramping, and recommended that she see a psychiatrist, possibly Margaret Miesche, M.D. (R. at 330, 333.) On March 19, 2005, he strongly recommended that Plaintiff see Dr. Miesche, to better manage the Lexapro and Wellbutrin prescribed for her depression and anxiety. (R. at 320.)

On May 15, 2006, Dr. Gottesman noted that Plaintiff had developed abdominal pain, loose bowel movement, and subjective fever four days earlier and that she was on a dose of steroids. (R. at 183.) On September 14, 2006, Plaintiff underwent another surgery for ovarian cancer. (R. at 147.) On September 25, 2006, Dr. Gottesman referred Plaintiff to endocrinologist Audrey B. Miklius, M.D., for an evaluation of possible cushing's syndrome. (R. at 150-51.) The referral letter stated that Plaintiff's increased symptoms suggested a flare of her Crohn's disease, that despite her medications, she continued to have abdominal pain, malaise, fatigue, hirsutism, and "moon facies," and that "a component of anxiety and depression might explain some of her symptoms." (*Id.*) In his medical chart, Dr. Gottesman noted that around Labor Day, Plaintiff had nausea that "waxed and waned," that she had re-enrolled in school but had dropped out due to "major stressors," and that she "had a lot of problems concentrating." (R. at 187.)

On August 17, 2006, Dr. Gottesman noted that Plaintiff felt "relatively well" overall. (R. at 185.) On September 29, 2006, he saw Plaintiff for complaints of blood stools and "marked

increase in stool frequency." (R. at 161.) He noted that Plaintiff had antibodies commonly associated with Crohn's disease and that her small bowel series suggested ileal disease. (*Id.*) He also noted that Plaintiff did not have a large amount of cramping, had no nausea or vomiting, and was able to tolerate a regular diet. (*Id.*) He noted that Plaintiff "was having some symptoms suggestive of a flare of her" Crohn's disease. (*Id.*) On October 9, 2006, he performed a colonoscopy that revealed mild ulceration of the ileocecal valve. (R. at 161, 152-53, 180-81.) On October 11, 2006, he wrote Plaintiff that she had "quite mild" Crohn's disease and recommended an upper GI series to check parts of her small intestine not visible through the colonoscopy. (R. at 163.)

On October 13, 2006, Dr. Miklius assessed Plaintiff and noted that she swam and walked sometimes, had borderline Crohn's disease and ovarian cancer, and had four surgeries including the ones to remove her gallbladder, ovaries, and fallopian tubes. (R. at 156.) She noted that Plaintiff had no complaints of nausea, vomiting, diarrhea, constipation, abdominal pain, fatigue, muscle cramps, weakness, depression, anxiety, or memory loss. (R. at 156-157.) She observed that Plaintiff was well nourished, well hydrated, and was in no acute distress. (R. 157.) She concluded that Plaintiff had "cushingoid features with a history of prednisone for 1 month," heterogeneous thyroid tissue, and two small colloid cysts in the thyroid. (*Id.*) She advised Plaintiff to reduce her caloric intake and begin exercising since she was "feeling better." (*Id.*)

On February 26, 2007, Dr Gottesman noted that Plaintiff had six bowel movements per day on a bad day, had some discomfort with eating and occasional nausea but no vomiting. (R. at 198.) He also noted that Plaintiff had "persistent symptoms of vegetative depression" and needed to see a psychiatrist. (*Id.*) On May 1, 2007, Plaintiff saw Dr. Miesche who dignosed Plaintiff with major depressive disorder. (R. at 471.) She noted that Plaintiff had diarrhea, abdominal cramping, and

- 4 -

nausea daily, but had some manageable days. (*Id.*) On May 24, 2007, she noted that Plaintiff's mood was better on medication, but she had the same tiredness level and felt hopeless and helpless. (R. 467.) She assessed Plaintiff as having major depression. (R. at 469.)

On June 7, 2007, Plaintiff started seeing psychologist Roberta Berger, Ph.D, upon recommendation from Dr. Miesche. (R. at 208.) Dr. Berger noted that Plaintiff had suffered from depression for the past two years and experienced nausea off and on. (*Id.*) She noted that Plaintiff had tried to go back to school but dropped out because of her sickness, did not have many friends, spent time on the computer, and liked to read books, build websites, listen to music, and go to concerts. (R. at 209.) On June 14, 2007, Dr. Berger noted that Plaintiff had "been swimming some," built websites for friends, and passed her time by "just lying down when she [felt] bad." (R. at 207.) On June 27, 2007, she noted that Plaintiff didn't feel good, her Crohn's disease was bad, and that she had to got to the bathroom all the time, including two trips during that session. (R. at 206.) On July 11, 2007, Dr. Berger reported that Plaintiff looked very sleepy and identified her medication as the cause of her sleepiness. (R. at 457.) She also reported that Plaintiff had watched a movie the previous evening with a trip to the bathroom. (*Id.*)

On July 18, 2007, Dr. Berger completed a mental status report for the Disability Determination Services ("DDS") in which she diagnosed Plaintiff with major depressive disorder. (R. at 205, 210-212.) She opined that Plaintiff had become depressed in conjunction with her Crohn's disease, ovarian cancer, and gallbladder removal, but her depression did not appear to be caused by her physical issues. (R. at 210.) She observed that Plaintiff was always clean and well-groomed, but when she was in pain, it was visible and she moved slowly. (*Id.*) She stated that Plaintiff's "medications caused her to be swelled and puffy around the face." (*Id.*) Dr. Berger found Plaintiff's mood "somewhat depressed" and observed that she was "clearly physically uncomfortable

much of the time." (*Id.*) She further stated that Plaintiff's affect was dysphoric but was often hard to read because of the effect of her medications on her face. (*Id.*) She found Plaintiff's thought process to be acceptable and her memory to be intact. (R. at 211.) She opined that her attention and concentration were normal – i.e. she could do serial 3's and 7's, count from twenty to one, and spell "world" backwards – but the medications sometimes made it difficult for her to concentrate for long periods. (*Id.*) She opined that her insight and judgment were "quite good." (*Id.*) She also opined that she was unable to sustain work consistently at the time. (R. at 212.) Dr. Berger stated that her depression was better "if and when" her Crohn's disease was "resolved in an acceptable manner." (*Id.*)

On July 24, 2007, Dr. Berger reported that Plaintiff was not feeling very well and was vomiting. (R. at 456.) On August 6, 2007, Dr. Miesche reported that Plaintiff was very ill that day but her mood continued to improve. (R. at 467.) She stated that Plaintiff was no longer tired and slept well with her medication. (*Id.*) She noted that Plaintiff enjoyed getting in the pool and walking in the mall. (*Id.*) On August 21, 2007, Dr. Berger reported that Plaintiff was not "hurting as much" that week and that she was swimming a lot. (R. at 455.) On October 31, 2007, Dr. Gottesman noted that Plaintiff had done "well" on medication, had not had bloody stools, had stabilized her weight, and had great recent labs. (R. at 375.) He noted, however, that she had constipation and had developed abdominal pain due to her medications. (*Id.*) On November 29, 2007, Dr. Berger reported that Plaintiff had a cold and was not very well that day because of a colon issue. (R. at 454.) On December 26, 2007, Dr. Berger noted that some days for Plaintiff were better and some worse, that her medication had side effects and made her tired, and that she was better emotionally. (R. at 453.)

On January 30, 2008, Dr. Gottesman reported that Plaintiff complained of abdominal pain

and fatigue from her medication. (R. at 369.) He noted that Plaintiff's weight continued to be stable and that she had no arthritis or skin irritation. (*Id.*) On February 19, 2008, Plaintiff called Dr. Gottesman asking him to change her dosage for Azathioprine because she was "very sleepy." (*Id.*) Dr. Gottesman responded that Azathioprine was not likely to cause sleepiness and was helping keep her inflammatory bowel disease under control. (*Id.*) He stated that her depression medication was more likely to cause fatigue. (*Id.*)

On January 23, 2008, Dr. Berger reported that Plaintiff's medication had kicked in and she had been feeling better lately, watching movies and shopping, and spending more time with her mother. (R. at 452.) On February 19, 2008, she noted that Plaintiff's medicine had stopped working and she was in a lot of pain for the past two and a half weeks. (R. at 451.) On March 4, 2008, she noted that Plaintiff was not feeling well and had a bladder infection and fever. (R. at 450.) She noted, however, that Plaintiff had previously had several good days in a row, swam for exercise and was on the last pages of a book. (*Id.*) On April 21, 2008, she noted that Plaintiff was sick to her stomach and still had "major problems." (R. at 448.) She noted that Plaintiff had seen a movie, had made a trip to Home Depot to build something for the pool, and was going to South Padre with her family for two weeks. (*Id.*) She also noted that her medication seemed to be helping with her diarrhea. (R. at 449.)

On May 28, 2008, Dr. Miesche reported that Plaintiff had enjoyed her trip to South Padre. (R. at 466.) She noted that it was difficult to assess Plaintiff's depression in light of her pain issues; she had "lots of abdominal pain" and diarrhea, her mood and energy levels were dropping, and she was sleeping poorly because of stomach pain. (*Id.*) She described Plaintiff's interests as getting into the pool a little. (*Id.*) She doubled Plaintiff's medication dosage. (*Id.*)

On June 4, 2008, Dr. Berger issued a medical source statement in which she opined that

- 7 -

Plaintiff had a "poor to none" ability to deal with work stress, meaning that she had no useful ability to function in that area, and that her ability to maintain attention and concentration was "consistent with sheltered workshop but not competitive job placement." (R. at 478.) Dr. Berger opined that Plaintiff was in continuous pain, and while her interpersonal skills were excellent, her inability to supercede her pain prevented her from working or doing anything requiring sustained effort. (*Id.*) Dr. Berger also opined that Plaintiff appeared to have the intellectual ability, thought organization, memory, and comprehension to work, but her physical pain and "her almost constant loose bowels" would interfere with her ability to work. (R. at 479.) She also opined that Plaintiff had poor to none ability to demonstrate reliability as an employee because her disease and pain issues were nearly constant or waxed and waned unpredictably. (*Id.*)

### 3. Hearing Testimony

On June 18, 2008, Plaintiff and a vocational expert ("VE") testified at a hearing before the ALJ. (R. at 37-38.) Plaintiff was represented by an attorney. (R. at 37.)

#### *a. Plaintiff's Testimony*

Plaintiff testified that she started noticing stomach pain from her Crohn's disease in February of 2004. (R. at 42.) She experienced sharp pain and cramping, as if her insides were being twisted, felt tired and nauseous, and had trouble concentrating when she was in pain. (*Id.*) The pain made her feel sad and hopeless. (R. at 43.) She had seen Dr. Berger, a psychologist, and Dr. Miesche, a psychiatrist for her depression. (R. at 42-43.) With Dr. Berger, she only had counseling sessions lasting forty-five minutes to an hour. (R. at 43.) The Lexapro she took for her depression helped her sleep at night, but it did not help much otherwise and made her feel tired. (R. at 43-44.) The Azathioprine she took made her feel tired and compromised her immune system, causing illnesses like sinus and bladder infections. (R. at 43.) Her nausea medication caused her headaches. (R. at

44.) To find relief from her pain, she went to the bathroom when needed and placed a pillow or heating pad on her stomach. (*Id.*) She laid down once every hour, sometimes more, and sometimes for a couple of hours at a time. (*Id.*) To take her mind off of the pain, she would turn on the television but had trouble concentrating. (R. at 45-46.)

On a typical day, she got up at six o'clock to go to the bathroom. (R. at 44.) She spent her day visiting the bathroom almost every hour. (R. at 44-45.) To avoid worsening her problem, she did not eat anything before going out. (R. at 44.) She did not help around the house or do grocery shopping. (R. at 45.) She did not attend church or belong to any clubs or social organizations. (*Id.*) She did not spend time with her friends anymore. (*Id.*) She had a cell phone but hardly used it. (R. at 51.) She hardly used the computer and had not built any websites after she got sick. (R. at 47, 51.) She drove maybe once a month to go to the post office. (R. at 44-45.) She went to a movie maybe twice a year. (R. at 45.) She played video games once every few months. (R. at 47.) She had been to the mall once that year. (R. at 49.) The last time she went to a concert was in February of 2003. (R. at 48.)

She had been on a date recently but was not dating anymore. (R. at 46.) She watched a two hour movie with her date but made three trips to the bathroom despite not eating all day, and she went straight home after the movie. (*Id.*) She also took a trip to South Padre, leaving two days early to accommodate her bathroom breaks. (*Id.*) She was up all night during a stop at a motel and was too tired to enjoy herself by the time she got to South Padre. (*Id.*) She could not work because she could not stay in one spot for very long or stay up without being able to lie down. (R. at 47.) She had not tried to work anywhere and had tried to go back to school. (R. at 50.)

### b. *Vocational Expert's Testimony*

The ALJ asked the VE to opine whether a person with Plaintiff's age and education could

perform work in the regional or national economy with the following functional limitations: lift and carry fifty pounds occasionally and twenty-five pounds frequently; sit, stand, or walk six hours per day; never climb ladders or ropes; understand, remember, and follow simple and detailed instructions; and complete repetitive work. (R. at 52.) The VE responded that the person could perform a full range of medium unskilled and semiskilled work, such as the work of a food service worker, warehouse worker, and laundry worker. (*Id.*) When the ALJ modified the hypothetical to include frequent interruptions in an eight-hour workday, and an inability to sustain a forty-hour work week, the VE testified that the hypothetical individual could not perform any work competitively. (R. at 53.)

C.     **ALJ's Findings**

The ALJ denied Plaintiff's application for benefits by written opinion issued on July 22, 2008. (R. at 12-21.) He found that Plaintiff had not engaged in substantial gainful activity since the application date. (R. at 17, ¶ 1.) He also found that Plaintiff suffered from the severe impairments of Crohn's disease and depression, but concluded that these impairments did not meet or medically equal a listed impairment. (R. at 17, ¶¶ 2, 3.) Plaintiff had the RFC to perform medium work, i.e. lift and carry fifty pounds occasionally and twenty-five pounds frequently, sit six hours in an eight-hour workday, stand and/or walk six hours in an eight-hour workday, and avoid climbing ladders and ropes. (R. at 18, ¶ 4.) In making that finding, the ALJ rejected the medical source statement completed by Dr. Berger on June 4, 2008. (R. at 19.) The ALJ stated that Dr. Berger's opinion was based on physical and subjective complaints, that he found it "significant' that Dr. Berger did not "treat physical impairments and [was] not an M.D.," and that Plaintiff's "mental [was] good." (*Id.*) He pointed out that during a physical examination with Dr. Miklius on October 13, 2006, Plaintiff had no complaints of depression, anxiety, memory loss, back pain, joint pain, joint swelling, muscle

cramps, weakness, nausea, diarrhea, fatigue, or urinary frequency. (*Id.*) He also pointed out that, Plaintiff reported to Dr. Miesche that she slept well, that she enjoyed getting in the pool and walking the mall, that she liked to listen to music and go to concerts, that she spent time on the computer and liked to build websites for friends. (*Id.*) He stated that Plaintiff had reported swimming on one occasion and indicated that she swam and was going to South Padre for two weeks. (*Id.*) He found that Plaintiff had no past relevant work, but given her age, education, and work experience, could perform other jobs existing in significant numbers in the economy. (R. at 20, ¶¶ 5-9.) He concluded that Plaintiff had not been disabled since the date of her application. (R. at 21, ¶ 10.)

## II. ANALYSIS

### A. Legal Standards

#### 1. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson*

*v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *Id.*

### 2. Disability Determination

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). The Commissioner utilizes a sequential five-step inquiry to determine whether an adult is disabled and entitled to benefits under the Social Security Act:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### 3. Standard for Finding of Entitlement to Benefits

Plaintiff asks the Court to reverse the Commissioner's decision and award benefits, and in the alternative, to remand for further proceedings. (Pl. Br. at 29.)

When an ALJ's decision is not supported by substantial evidence, the case may be remanded "with the instruction to make an award if the record enables the court to determine definitively that the claimant is entitled to benefits." *Armstrong v. Astrue*, No. 1:08-CV-045-C, 2009 WL 3029772, *10 (N.D. Tex. Sept. 22, 2009) (adopting recommendation of Mag. J.). The claimant must carry

"the very high burden of establishing 'disability without any doubt.'" *Id.* at *11 (citation omitted). Inconsistencies and unresolved issues in the record preclude an immediate award of benefits. *Wells v. Barnhart*, 127 F. App'x 717, 718 (5th Cir. 2005). The Commissioner, not the court, resolves evidentiary conflicts. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

**B.** **Issue for Review**

Plaintiff presents the following issues for review:

1. did the ALJ properly assess the opinion of Plaintiff's treating psychologist, Dr. Berger;

2. does substantial evidence support the ALJ's RFC finding; and

3. is the ALJ's credibility finding supported by substantial evidence?

(Pl. Br. at 2.)

**C.** **Treating Psychologist's Opinion**

Plaintiff complains that the ALJ erred by failing to properly assess the treating source opinion of her psychologist Dr. Berger. (Pl. Br. at 11-12.) She argues that Dr. Berger's opinion was entitled to considerable weight, if not controlling weight, in determining disability. (*Id.*) She submits that if the ALJ found Dr. Berger's treatment notes too subjective or lacking in objective support, he should have re-contacted Dr. Berger for clarification. (*Id.* at 18-19.)

The Commissioner is entrusted to make determinations regarding disability, including weighing inconsistent evidence. 20 C.F.R. § 404.1527(c)(2). Every medical opinion is evaluated regardless of its source, but the Commissioner generally gives greater weight to opinions from a treating source. 20 C.F.R. § 404.1527(d). A treating source is a claimant's "physician, psychologist, or other acceptable medical source" who provides or has provided a claimant with medical treatment or evaluation, and who has, or has had, an ongoing treatment relationship with the claimant. 20

C.F.R. § 404.1502. When "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," the Commissioner must give such an opinion controlling weight. 20 C.F.R. § 404.1527(d). If controlling weight is not given to a treating source's opinion, the Commissioner considers six factors in deciding the weight given to each medical opinion: (1) whether the source examined the claimant; (2) whether the source treated the claimant; (3) the medical signs and laboratory findings that support the given opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is made by a specialist or non-specialist; and (6) any other factor which "tend[s] to support or contradict the opinion." *See id.* § 404.1527(d)(1)-(6).

While an ALJ should afford considerable weight to opinions and diagnoses of treating physicians when determining disability, sole responsibility for this determination rests with the ALJ. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). If evidence supports a contrary conclusion, an opinion of any physician may be rejected. *Id.* A treating physician's opinion may also be given little or no weight when good cause exists, such as "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 455-56. Nevertheless, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Id.* at 453. A detailed analysis is unnecessary, however, when "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another"

or when the ALJ has weighed "the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id*. at 458. "[I]f the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e)." *Id.* at 453.

Here, Dr. Berger opined that Plaintiff had a "poor to none" ability to deal with work stress meaning that she had no useful ability to function in that area, and that her ability to maintain attention and concentration was "consistent with sheltered workshop but not competitive job placement." (R. at 478.) She also opined that Plaintiff's interpersonal skills were excellent, but her inability to supercede her pain prevented her from working or doing anything requiring sustained effort. (R. at 478.) She further opined that Plaintiff appeared to have the intellectual ability, thought organization, memory, and comprehension to work, but her physical pain and "her almost constant loose bowels" would interfere with her ability to work. (R. at 479.) She opined that Plaintiff had poor to none ability to demonstrate reliability as an employee because her disease and pain issues were nearly constant or waxed and waned unpredictably. (R. at 479.)

In rejecting Dr. Berger's opinion, the ALJ argued that the opinion was based on physical and subjective complaints, Dr. Berger did not treat physical impairments and was not an M.D., and Plaintiff's "mental [was] good." (R. at 19.) He pointed out that during a physical examination with Dr. Miklius on October 13, 2006, Plaintiff had no complaints of depression, anxiety, memory loss, back pain, joint pain, joint swelling, muscle cramps, weakness, nausea, diarrhea, fatigue, or urinary

frequency. (R. at 19.) He also pointed out that Plaintiff told Dr. Miesche she slept well, enjoyed getting in the pool and walking the mall, liked to listen to music and go to concerts, spent time on the computer, and liked to build websites for friends. (R. at 19.) He stated that Plaintiff had reported swimming and indicated that she was going to South Padre for two weeks. (R. at 19.)

Dr. Berger's opinion, as a treating psychologist's opinion, was a treating source statement for purposes of 20 C.F.R. § 404.1527(d). *See* 20 C.F.R. § 404.1502. The ALJ here did not find as a factual matter, and based on competing first-hand evidence, that another doctor's opinion was more well-founded than Dr. Berger's opinion, or weigh Dr. Berger's opinion on disability against the medical opinion of other physicians who had treated or examined Plaintiff and had specific medical bases for a contrary opinion. *Newton*, 209 F.3d. at 458. The ALJ was therefore required to perform the six-factor analysis outlined in 20 C.F.R. § 404.1527(d)(1)-(6) before rejecting Dr. Berger's opinion. The ALJ did not perform that analysis, however. Notably, he did not accommodate records from other physicians, particularly Dr. Miesche and Dr. Gottesman, supporting Dr. Berger's opinion. Instead, he relied on reports by Plaintiff that she "enjoyed" and "liked" certain activities, had taken a trip to South Padre, had not reported any symptoms during a physical examination, had gone swimming, had watched a movie once or twice, and had reported building websites for friends. (R. at 19.) It is well established that an "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir.2000) (citation omitted). The ALJ should have considered the evidence he relied on in light of the entire record. There is no indication from the ALJ's short narrative discussion that he did that.

The ALJ's failure to consider all of the evidence and to conduct an analysis under 20 C.F.R.

§ 404.1527(d) was in error. *See Waters v. Massanari*, No. 4:00-CV-1656-Y, 2001 WL 1143149, at *11 (N.D. Tex. Sept 24, 2001) (holding that the Commissioner had conceded "legal error" when the ALJ improperly evaluated opinions of a treating physician). Accordingly, the case must be remanded to the Commissioner for reconsideration of Dr. Berger's opinion under the factors set out in 20 C.F.R. § 404.1527(d). *Locke v. Massanari*, 285 F. Supp.2d 784, 404 (S.D. Tex. 2001) (holding that an ALJ's failure to consider the criteria set out in 20 C.F.R. § 1527(d)(2) required remand); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) ("Conflicts in the evidence are for the Commissioner and not the courts to resolve"). Since remand is required on this issue, and its determination could impact the remaining issues for review, the Court does not consider them.

### III. CONCLUSION

Plaintiff's request in her opening brief should be **GRANTED**, Defendant's motion should be **DENIED**, and the case should be **REMANDED** to the Commissioner for reconsideration.

**SO RECOMMENDED,** on this 26th day of October, 2010.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE